**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| JOHN PENDLETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:14 C 02325 |
| v. | ) | Judge Marvin E. Aspen |
| | ) | |
| BOB FRENSLEY CHRYSLER JEEP | ) | |
| DODGE RAM, INC., AND THOMAS | ) | |
| MOWELL, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Pendleton, an African-American, filed this lawsuit against his employer,

Bob Frensley Chrysler Jeep Dodge Ram, Inc. ("Bob Frensley"), and his supervisor,

Thomas Mowell ("Mowell"), alleging violations under Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S. § 2000e, *et seq.*, 42 U.S.C. § 1981 ("Section 1981"), and the Tennessee

Human Rights Act,[1] Tenn. Code. Ann. § 4–21–101, *et seq.* ("THRA").  Pendleton contends that

Defendants subjected him to a hostile work environment and terminated him because of his race

in retaliation for objecting to Defendants' alleged unlawful conduct.  Presently before us are two

motions for summary judgment filed by Defendants,[2] which we deny for the reasons discussed

below.

---

[1] Plaintiff brings claims against Defendant Mowell under Section 1981, which allows for individual liability.  (Compl. ¶¶ 25–30.)  *See Jones v. Cont'l Corp.*, 789 F.2d 1225, 1231 (6th Cir. 1986); *Fite v. Comtide Nashville, LLC*, 686 F. Supp. 2d 735, 749 n.7 (M.D. Tenn. 2010).  As to his claims against Defendant Bob Frensley, Plaintiff relies on Title VII, Section 1981 and the THRA.  (Compl. ¶¶ 18–24.)

[2] Plaintiff alleges that Defendant Bob Frensley has only moved to dismiss Plaintiff's hostile work environment claim, THRA retaliation claim and demand for punitive damages. (Resp. Frensley MSJ at 9.)  While we agree with Plaintiff that Defendant Bob Frensley's memorandum only addresses the sufficiency of Plaintiff's hostile work environment claim, THRA claim, and punitive damages demand, we consider each of Plaintiff's claims now.

# FACTUAL BACKGROUND[3]

Plaintiff began working as a car salesman for Defendant Bob Frensley on

February 26, 2014.  (Resp. SOF ¶ 1.)  Plaintiff's last day of work was April 26, 2014.  (*Id.*)

During Plaintiff's tenure at Bob Frensley, Defendant Mowell served as Bob Frensley's New Car

Manager and was Plaintiff's supervisor.  (Mowell Dep. at 2, 27.)  Plaintiff testified that

throughout his employment at Bob Frensley, Mowell made offensive racially derogatory

statements to Plaintiff on a daily basis.  (Add. SOF ¶ 5.)  According to Plaintiff, Mowell told

"nigger jokes," made fun of the way African-Americans spoke, told Plaintiff that "the only thing

that niggers could do was wash cars," said that "he had a big dick like a nigger," and informed

Plaintiff that he left his previous employer because his supervisor was a "lazy nigger."

(Pendleton Dep. at 73, 111–12, 120.)  Plaintiff stated that Mowell made racially inappropriate

comments every day; that the comments were constant.  (*Id.* at 111.)  According to Plaintiff's

testimony, he did not find Mowell's jokes funny; instead; "it was sickening just having to work

[at Bob Frensley] or [be] around [Mowell]."  (*Id.* at 113.)  Mowell denies making any racially

derogatory statements.  (Mowell Dep. at 41–44.)

Plaintiff testified that he complained of Mowell's inappropriate conduct to both Mowell

and Jon Henderson ("Henderson"), another Bob Frensley Manager.  (Pendleton Dep. at 107.)

Plaintiff testified that he complained to Mowell daily and complained to Henderson several

---

(*See* Frensley Mem. ISO MSJ at 1.)  In his response, Plaintiff addresses all of his claims, and
accordingly, had sufficient opportunity to respond prior to our ruling.  *Hardy Oil Co., Inc. v.
Nationwide Agribusiness Ins. Co.*, 587 Fed. Appx. 238, 239 (6th Cir. 2014).

[3] The parties have filed lengthy Local Rule 56.01(b) statements, and virtually all of the
statements of fact are disputed in whole or in part.  Much of the Local Rule 56.01(c) additional
statements of fact are disputed as well.  Accordingly, unless we explicitly note that a fact is
undisputed, we rely on Plaintiff's version of the fact, *Walker v. Davis*, 649 F.3d 502, 505
(6th Cir. 2011) ("At the summary judgment stage, the relevant facts are the plaintiff's version of
the facts . . . ."), but note Defendants' conflicting version of the fact as well.

times, specifically telling the men that "the nigger jokes have to stop." (*Id*. at 107–08.) According to Plaintiff, Defendants took no correction action in response to his complaints. (Add. SOF ¶ 17.) Defendants deny that Plaintiff ever complained of racial discrimination or harassment. (Resp. Add. SOF ¶ 15.) According to company policy, employees are required to report discrimination or harassment to "department managers." (Add. SOF ¶ 14.) Under the same policy, department managers are then required to report any complaints to Jennifer Webb ("Webb"), Bob Frensley's owner and general manager. (*Id*. at 16.) During Plaintiff's time at Bob Frensley, Mowell and Henderson were both department managers. (*Id*.) Neither Mowell nor Henderson informed Webb of Plaintiff's allegations. (*Id*.)

On April 26, 2014, Plaintiff was involved in an incident at Bob Frensley with a Caucasian salesman, Derek Ritchie ("Ritchie"). (*Id*. at 24.) That day, Plaintiff was assisting customers with a sale when Mowell directed Ritchie and another Caucasian salesman, Mr. Whittle ("Whittle") to assist Plaintiff.[4] (*Id*.; Ritchie Decl. at ¶ 4.) Plaintiff thought Ritchie and Whittle were attempting to take his sale and a verbal argument ensued. (Add. SOF ¶ 24; Ritchie Decl. at ¶ 4.) Plaintiff, Ritchie and Whittle exited the showroom towards the back of the dealership. (Add. SOF ¶ 28, Ritchie Decl. ¶ 4.) Ritchie then pushed and punched Plaintiff, knocking him to the ground. (Add. SOF ¶ 29; Ritchie Decl. ¶ 4.) Whittle and Douglas restrained Plaintiff and Ritchie struck Plaintiff again. (Add. SOF ¶ 31.) Ritchie then walked back to the front of the dealership. (Ritchie Decl. ¶ 4.) Plaintiff never struck Ritchie or anyone else. (Add. SOF ¶ 30.) Plaintiff testified that moments later, Mowell approached Plaintiff and said: "Get your black ass out of here. You're fired. . . . If you don't leave the premises . . . we're

---

[4] Defendants allege that before and after the incident, Plaintiff was "agitated" and "very combative" with customers. (Mowell Dep. at 48; SOF ¶ 9.) Stan Douglas ("Douglas"), a Caucasian Finance Manager, also testified that Plaintiff was acting "belligerent," "was totally out of control" and "seemed to be under the influence of something." (SOF ¶¶ 13, 14.) Plaintiff denies these allegations. (Resp. SOF ¶¶ 8–9, 13.)

calling the police." (*Id.* ¶ 35.) Defendant Mowell denies making these statements.

(Resp. Add. SOF ¶ 35.) It is undisputed that Mowell did not witness the incident and that

Mowell told Plaintiff he needed to leave the premises or Mowell would call the police.

(Add. SOF ¶¶ 34–35.) Plaintiff left the dealership. (*Id.* ¶ 35.) Ritchie, on the other hand, was

not asked to leave and finished his shift. (Ritchie Decl. ¶ 4.) According to Ritchie, immediately

following the fight, Mowell told him: "You don't have to worry about [Plaintiff] anymore, I fired

him because of the fight."[5] (*Id.*) It is undisputed the Ritchie was not terminated or suspended

for his involvement in the April 26 incident. (Add. SOF ¶ 37.) Ritchie received an "Employee

Warning" for the April 26 incident on Monday, April 28. (*Id.* ¶ 38.) Defendant Mowell

completed that write-up on April 26. (*Id.*)

Defendants deny that Plaintiff was fired and assert that Plaintiff was administratively

discharged when he failed to return to work on Monday, Tuesday and Wednesday following the

incident.[6] (Resp. Add. SOF ¶ 36; Webb Dep. at 31.) Additionally, Defendant Mowell testified

that he called Plaintiff on his cell phone numerous times on April 26, April 27 and April 28 to

check in on Plaintiff and to determine whether Plaintiff intended to return to work.

(Add. SOF ¶ 42.) Plaintiff testified that he was never contacted by Defendants following the

April 26 incident. (*Id.* ¶ 44.) According to Mowell's cellphone records, Mowell did not call

Plaintiff from his cellphone on April 26, April 27 or April 28. (*Id.* ¶ 43.) Defendants allege that

had Plaintiff returned to work on Monday, April 28, he would have received the same

punishment as Ritchie, a write-up. (*Id.* ¶ 39.) There is no employee write-up for Plaintiff in the

---

[5] Defendants do not raise a hearsay argument, but for the sake of completeness, we find that this statement is not hearsay according to Federal Rule of Evidence 801(d)(2). *See* Fed. R. Evid. 801(d)(2).

[6] Alternatively, for the purposes of summary judgment only, Defendants contend that "even if [Defendants] terminated Plaintiff on April 26, 2014 as alleged by Plaintiff, such conduct does not constitute wrongful termination, because Plaintiff would have been terminated for his prolonged combative and inappropriate behavior" on April 26, 2014. (Resp. Add. SOF ¶ 5.)

record.  Additionally, Defendants allege that they obtained written statements from employees

concerning the April 26 incidents.  (*Id*. ¶ 45.)  Defendants did not produce any written statements

from April 26.  (*Id*.)

Plaintiff testified that a second African-American salesman, Willie Epps ("Epps"), was

similarly terminated by Defendant Bob Frensley following a separate incident with a Caucasian

employee, Jason Whittle.  (*Id*. ¶ 18; Pendleton Dep. at 84–86.)  Epps testified that it was

Defendant Mowell who stepped in to break up the confrontation and that Mowell witnessed

Whittle instigate the fight.[7]  (Epps Dep. at 28, 71.)  Epps was terminated by Jon Henderson the

next day.  (*Id*.)  Whittle was not terminated.  (Add. SOF ¶ 18, Pendleton Dep. at 84–86;

Epps Dep. at 71.)

Plaintiff filed his charge with the E.E.O.C. on May 1, 2014.  (Add. SOF ¶ 18.)  Defendant

Bob Frensley did not investigate Plaintiff's E.E.O.C. claims.  (Webb Dep. at 59.)

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine

issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505,

2510 (1986); *see also DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (describing the issue

as "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law") (internal quotation

omitted).  This standard places the initial burden on the moving party to identify those portions

of the record that "it believes demonstrate the absence of a genuine issue of material fact."

---

[7] Epps testified that he did not think his termination was "right" but did not believe that race
played any factor in the termination.  (Epps Dep. at 29, 72.)

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "must go beyond the pleadings" and identify portions of the record demonstrating that a material fact is genuinely disputed. *Id.*; Fed. R. Civ. P. 56(c). The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006) (internal quotation omitted). In deciding whether summary judgment is appropriate, however, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513; *see Clayton v. Meijer, Inc.*, 281 F.3d 605, 609 (6th Cir. 2010).

## ANALYSIS

Plaintiff alleges that Defendants: (1) discriminated against him based on his race, (2) retaliated against him based on his complaints of discrimination, and (3) created a hostile work environment. We discuss each claim in turn.

## I. Race Discrimination

Plaintiff brings his race discrimination claim under Title VII, § 1981, and the THRA, yet we need only conduct one analysis. *Jackson v. Quanex Corp.*, 191 F.3d 647, 659 (6th Cir. 1999) (explaining that § 1981 claims are analyzed "under the same standards as claims of race discrimination brought under Title VII"); *Chattman v. Toho Tenax Amer., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012) (analyzing THRA claims under the Title VII standard); *Mullins v. Goodyear Tire & Rubber Co.*, 291 Fed. Appx. 744, 745 n.1 (6th Cir. 2008) ("The THRA is a state law analogous to Title VII and the statues are analyzed identically.").

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer[8] "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may establish a Title VII claim either by offering direct proof of discrimination or by presenting evidence indirectly under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). *Chattman*, 686 F.3d at 346; *Gebremicael v. Cent. Parking Sys., Inc.*, No. 12–C–0064, 2014 WL 3548972, at *9 (M.D. Tenn. July 17, 2014). Under either method, summary judgment is inappropriate if plaintiff proffers evidence from which an inference of intentional discrimination can be drawn. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252–53 (6th Cir. 1998). Plaintiff relies on both the direct and indirect method of proof.

### a. Direct Evidence of Discrimination

Plaintiff argues that he has presented sufficient direct evidence of discrimination to defeat summary judgment. Specifically, Plaintiff alleges that Defendant Mowell's discriminatory statements leading up to and on April 26 constitute direct evidence of discriminatory animus. (Resp. at 11–13.) We agree.

"Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Ondricko v. MGM*

---

[8] To establish individual liability for a violation of Section 1981, plaintiff must show that defendant exercised supervisory authority over plaintiff and was personally involved in the discriminatory conduct. *Jones*, 789 F.2d at 1231; *Walker v. Wholesale, Inc.*, No. 12–C–595, 2013 WL 5502912, at *16 (M.D. Tenn. Oct. 2, 2013); *Fite*, 686 F. Supp. 2d at 749 n.7 ("Generally, as here, if a supervisor with hiring and firing authority can be directly connected to the discriminatory conduct, a Section 1981 action against that individual is proper."). Plaintiff asserts that Defendant employer is liable for the discriminatory actions of its supervisor, Defendant Mowell. All of Plaintiff's claims rely on proof of Mowell's discriminatory conduct so we analyze Plaintiff's claims against Defendant Mowell and Defendant employer Bob Frensley together.

*Grand Detroit, LLC*, 689 F.3d 642, 650 (6th Cir. 2012) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (finding that raced based statement by decision maker shortly before notifying Caucasian plaintiff of her termination was direct evidence of race discrimination); s*ee also Brewer v. New Era, Inc.*, 564 Fed. Appx. 834, 839 (6th Cir. 2014) (holding that statements made two months before termination decision that plaintiffs were "too old" and "needed to retire" were direct evidence of Title VII age discrimination); *Taylor v. Bd. of Educ. of Memphis City Sch.*, 240 Fed. Appx. 717, 720 (6th Cir. 2007) (determining that statement that individual was hired to maintain racial balancing was direct evidence of discrimination). Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004); *see also Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (holding that direct evidence of discrimination compels the conclusion that defendant's actions were motivated by racial animus without the factfinder relying on inference); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (finding that proffered evidence was not direct evidence of discrimination because it required jury to infer from the timing of plaintiff's termination that he was terminated because of his age). "Racial slurs or statements that suggest that the decision-maker relied on impermissible stereotypes to assess an employee's ability to perform can constitute direct evidence." *Erwin v. Potter*, 79 Fed. Appx. 893, 897 (6th Cir. 2003); *see also Chattman*, 686 F.3d at 346 (holding that three racists statements, including a statement that "America won't allow a nigger[9] president," constituted direct evidence of discrimination); *Cushman-Lagerstrom v. Citizens Ins. Co. of Amer.*, 72 Fed. Appx. 322, 331 (6th Cir. 2003) ("For example, racial slurs by a decisionmaker

---

[9] The use of the word "nigger" is a racial slur. *NLRB v. Foundry Div. of Alcon Indus.*, 260 F.3d 631, 635 (6th Cir. 2001).

constitute direct evidence that is sufficient to get the plaintiff's case to a jury.") (internal quotation omitted); *Quanex Corp.*, 191 F.3d at 662 ("[A]n abundance of racial epithets and racially offensive graffiti could hardly qualify as offhand or isolated. . . . [S]uch continuous conduct may constitute severe and pervasive harassment."); *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1249 (6th Cir. 1995) (holding that repeated racial slurs by owners constituted direct evidence that plaintiff's termination might have been racially motivated); *Eskridge v. Nissan N. Amer., Inc.*, No. 06-0677, 2008 WL 471687, at *7 (M.D. Tenn. Feb. 19, 2008) (stating that the use of racial slurs by a manager is an example of direct evidence of discrimination); *Booker v. Budget Rent-A-Car Sys.*, 17 F. Supp. 2d 735, 749 (M.D. Tenn. 1998) ("[T]he use of racial slurs may constitute direct evidence if it is routine, involves a person with the capacity to make employment decisions, or if, in conjunction with other evidence, establishes a nexus between the employment action and the discriminatory conduct.") (internal citations omitted). Only comments made by individuals in the decision-making process regarding the complained of employment action constitute direct evidence of discrimination. *Geiger v. Tower Auto.*, 579 F.3d 614, 620–21 (6th Cir. 2009); *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003) (holding that comments made by non-decisionmakers were not direct evidence of discrimination).

Once plaintiff produces direct evidence of discrimination, the burden shifts to the defendant to prove that it would have terminated the employee, "even if it had not been motivated by impermissible discrimination." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *Chattman*, 686 F.3d at 349, *Gebremicael*, 2014 WL 3548972, at *9.

Here, Plaintiff alleges that the racially derogatory comments made by Defendant Mowell throughout Plaintiff's employment, along with Mowell's statement on April 26, constitute direct

evidence of racial discrimination. We agree. According to Plaintiff's testimony,

Defendant Mowell told "nigger jokes" and made other racially derogatory statements on a daily

basis.[10] (Pendleton Dep. at 111) Plaintiff also testified that at the time Mowell fired him,[11]

Mowell yelled, "Get your black ass out of here." (Add. SOF ¶ 30.) Defendant Mowell's

repeated use of racial slurs coupled with Mowell's statement, "Get your black ass out of here,

you're fired," "establishes a nexus between the employment action and the discriminatory

conduct." *Chattman*, 686 F.3d at 346; *Cushman-Lagerstrom*, 72 Fed. Appx. at 331; *Erwin*,

79 Fed. Appx. at 897; *Talley*, 61 F.3d at 1249; *Eskridge*, 2008 WL 471687, at *7; *Booker*,

17 F. Supp. 2d at 749.

Because Plaintiff has provided sufficient direct evidence of Defendants' discriminatory

motive, the burden shifts to Defendants to prove that they would have made the same

employment decision absent a discriminatory purpose. *Nguyen*, 229 F.3d at 563; *Chattman*,

686 F.3d at 349; *Gebremicael*, 2014 WL 3548972, at *9. Defendants contend that Plaintiff was

administratively terminated because he did not return to work after the April 26 incident.

(Resp. Add. SOF ¶ 4; Webb Dep. at 18–19.) Defendants acknowledge, however, "that Plaintiff

disputes the facts involving his termination, which creates an issue of fact for the jury."

(Mowell Reply at 2.) In the alternative, Defendants argue that even if Plaintiff was terminated,

his termination was not unlawful. If Plaintiff was terminated, it was for "his prolonged

combative and inappropriate behavior display in front of customers throughout the day on

April 26, 2014." (*Id.*) Defendants' second bite at the apple fares no better than their first. Like

---

[10] Defendants deny that Mowell made racially derogatory statements. This dispute turns on the credibility of witnesses and cannot be decided on a motion for summary judgment. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513; *Dawson v. Dorman*, 528 Fed. Appx. 450, 452 (2013).
[11] Defendants also deny that Plaintiff was fired. Again, this dispute turns on the credibility of witnesses and cannot be decided on a motion for summary judgment. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513; *Dawson*, 528 Fed. Appx. at 452.

Defendants' first argument, Plaintiff has presented competent evidence to refute Defendants' assertion that he was terminated for inappropriate behavior in front of customers on April 26. (*See generally* Pendleton Dep.; Decl. Ritchie ¶ 4 (stating that Defendant Mowell told him Pendleton was fired because of the fight).)  We find that a genuine issue of material fact exists as to why (and if) Plaintiff was terminated.  Accordingly, summary judgment is improper.

    *b.  Indirect Evidence of Discrimination*

Along with his direct evidence of discrimination, Plaintiff also presents indirect evidence to support his discrimination claim.  While we find that Plaintiff's direct evidence is sufficient to defeat summary judgment, in the abundance of caution, we also analyze Plaintiff's indirect evidence.

If plaintiff cannot prove discriminatory animus through the direct method, he may rely on indirect circumstantial evidence "which would support an inference of discrimination."  *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997); *see also Kyle-Eiland v. Neff*, 408 Fed. Appx. 933, 939 (6th Cir. 2011); *Chase v. Clarksville-Montgomery Cty. Sch. Sys.*, No. 13–C–957, 2015 WL 1279595, at *6 (M.D. Tenn. March 20, 2015).  In analyzing a discrimination claim under the indirect method, we apply the burden-shifting framework set forth in *McDonnell Douglas*, 411 U.S. at 802–05, 93 S. Ct. at 1824–25.  *Brewer*, 564 Fed. Appx. at 840; *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012); *Chase*, 2015 WL 1279595, at *6.  According to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination.  *Brewer*, 564 Fed. Appx. at 840; *Blizzard*, 698 F.3d at 283; *Chase*, 2015 WL 127995, at *6.  To establish a prima facie case of race discrimination under a disparate treatment theory, plaintiff must show that: (1) he is a member of a protected class, (2) he was qualified for his job and performed it satisfactorily, (3) despite his qualifications and

performance, he suffered and adverse employment action, and (4) he was replaced by a person

outside the protected class or was treated less favorably than a similarly situated individual

outside his protected class.[12] *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 957

(6th Cir. 2014); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007); *Jones v.*

*Metro. Gov't of Nashville and Davidson Cty.*, No. 12–860, 2014 WL 1892598, at *5

(M.D. Tenn. May 12, 2014). To qualify as "similarly situated," an individual "must have dealt

with the same supervisor, have been subject to the same standards and have engaged in the same

conduct without such differentiating or mitigating circumstances that would distinguish their

conduct or the employer's treatment of them." *Hollins v. Alt. Co.*, 188 F.3d 652, 659

(6th Cir. 1999) (internal citations omitted); *see also Adebisi v. Univ. of Tenn.*,

341 Fed. Appx. 111, 112 (6th Cir. 2009); *Jones*, 2014 WL 1892598, at *5. If plaintiff establishes

a prima facie case of discrimination, the burden then shifts to the defendant to "articulate some

legitimate, nondiscriminatory reason for its actions." *Arendale v. City of Memphis*, 519

F.3d 587, 603 (6th Cir. 2008) (internal citation omitted); *see also Clay*, 501 F.3d at 703; *Ervin v.*

*Honeywell Tech. Sol., Inc.*, No. 10–C–1234, 2013 WL 594747, at *9

(M.D. Tenn. Feb. 15, 2013). If defendant provides a legitimate reason for the termination, the

burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reasons

offered by defendant were a pretext for discrimination. *Arendale*, 519 F.3d at 603; *Clay*, 501

F.3d at 703; *Ervin*, 2013 WL 594747, at *9. Pretext may be shown if "the proffered reason

(1) has no basis in fact, (2) did not actually motivate defendant's challenged conduct, or (3) was

insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021

---

[12] Plaintiff may also establish a prima facie case of discrimination by showing: (1) "membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Blizzard*, 698 F.3d at 283 (internal citation omitted).

(6th Cir. 2000); *see also Wheat v. Fifth Third Bank*, 785 F.3d 230, 240 (6th Cir. 2015); *Downs v. Shinseki*, No. 10–661, 2013 WL 4401836, at *6 (M.D. Tenn. Aug. 14, 2013). "[T]o survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012) (internal citation omitted).

It is undisputed that Plaintiff has met the first two prongs of a prima facie discrimination claim; he is an African-American and Defendants do not argue that Plaintiff was not qualified for his job. (*See* Add. SOF ¶ 3 ("According to Defendants, Mr. Pendleton was a 'very, very good salesperson' who did a 'very good job' of selling cars at Bob Frensley.").) Additionally, for purposes of this motion, Defendants have conceded that Plaintiff was terminated.

(Resp. Add. SOF ¶ 36.) We are left, then, with the fourth prong of a discrimination analysis; did Plaintiff present sufficient evidence that he was replaced by a person outside his protected class or was treated less favorably than a similarly situated individual outside his protected class. Plaintiff does not assert that he was replaced by a person outside his protected. Instead, he argues that he was treated less favorably than a similarly situated Caucasian salesman, Derek Ritchie, when Plaintiff was terminated for the April 26 fight and Ritchie was not. (Resp. at 14.) Plaintiff has presented sufficient evidence to suggest that Ritchie had the same supervisor (Mowell) and was subject to the same conduct standards as Plaintiff. Plaintiff and Ritchie have both testified that Ritchie punched Plaintiff and that Plaintiff did not physically retaliate.

(*See* Ritchie Decl. ¶ 4.) For purposes of this motion, we find that Derek Ritchie was a "similarly situated" employee and was treated more favorably than Plaintiff when he was not terminated or sent home for his participation in the April 26 incident.[13] (*See* Ritchie Decl. ¶ 4.)

---

[13] Defendants contend that because they allege Plaintiff was terminated due to disruptive behavior throughout the day, not based on the fight with Ritchie, Ritchie is not a similarly

*Hollins*, 188 F.3d at 659. Additionally, we find that Mr. Epps' testimony concerning his termination supports an inference of discrimination. Mr. Epps, an African-American employee, testified that he was also fired by Defendants after an altercation with a Caucasian salesman who was not terminated for similar conduct. (Add. SOF ¶ 18, Pendleton Dep. at 84–86; Epps Dep. at 71.)

Defendants allege that Plaintiff was fired because of his disruptive behavior in front of customers throughout the day on April 26. Because Defendants offer a legitimate reason for termination, the burden shifts back to Plaintiff to show that their proffered reason for termination is pretext for unlawful discrimination. *Arendale*, 519 F.3d at 603; *Clay*, 501 F.3d at 703; *Ervin*, 2013 WL 594747, at *9. We find that Plaintiff has presented sufficient evidence that Defendants' proffered termination rational was pretextual. Ritchie testified that Mowell approached him after the April 26 incident and said that Pendleton was fired because of the fight.[14] (Ritchie Decl. ¶ 4.) Additionally, Plaintiff testified that immediately after the incident, Mowell yelled "Get your black ass out of here. You're fired."[15] (Add. SOF ¶ 35.)

---

situated comparator. (Mowell Mem. ISO MSJ at 10.) We find this argument unpersuasive. Plaintiff alleges that he was terminated because of the fight with Ritchie. Defendants argue he was not. Again, these conflicting testimonies create a genuine issue of material fact that can only be resolved by a jury, not by the Court on a motion for summary judgment. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513; *Dawson*, 528 Fed. Appx. at 452. To the extent that Defendants offer the alternative rationale for Plaintiff's termination as evidence of a legitimate, non-discriminatory reason for termination, we will address that argument in our pretext analysis.

[14] Defendant Mowell alleges that he "held an honestly held belief that Plaintiff engaged in belligerent and unprofessional conduct inside the dealership and in front of customers," and thus is protected from liability under the "honest belief doctrine." (Mowell Mem. ISO MSJ at 12.) Defendant is correct that if "an employer had an honest belief in the proffered basis for the adverse employment actions, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous." *Upshaw v. Ford Motors Co.*, 576 F.3d 576, 586 (6th Cir. 2009). Here, Plaintiff has presented evidence to call into question Defendant Mowell's "honest belief." As addressed above, there is testimony that Mowell informed Ritchie he fired Pendleton because of the fight. If the jury believes Ritchie's testimony, they could easily find

For the reasons stated above, Defendants' motions for summary judgment as to Plaintiff's race discrimination claims are denied.

## II. Retaliation

Along with his claims for race discrimination, Plaintiff also brings claims against both Defendant Bob Frensley and Defendant Mowell for retaliation.[16] (Compl. ¶¶ 21, 26.) Retaliation claims pursuant to Title VII, Section 1981 and the THRA are analyzed under the same framework. *Jackson v. Bd. of Educ. of Memphis City Sch. of Memphis, Tenn.*, 494 Fed. Appx. 539 (Table), 543 n.1 (6th Cir. 2012); *Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001) (affirming district court's conclusion that THRA and Section 1981 retaliation claims are governed by the Title VII standard); *Walker*, 2013 WL 5502912, at *2 n.3 ("[C]laims under Title VII, § 1981, and the THRA are subject to the same legal and evidentiary standards as to all of the discrimination and hostile work environment claims asserted in this lawsuit.").

Title VII prohibits an employer from retaliating against an employee who has either: (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To maintain a claim for retaliation, plaintiff must establish: (1) he engaged in protected activity; (2) defendants knew that

that Mowell did not honestly belief Pendleton engaged in disruptive behavior throughout the day on April 26.

[15] Defendant Mowell additionally asserts that he is protected from liability under the "same actor inference." (Mowell Mem. ISO MSJ at 13.) In short, the same actor inference allows a jury to infer lack of discriminatory intent if the same individual hired and then fired plaintiff. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573 (6th Cir. 2003). This circuit has held, though, that while the "factfinder [may] decid[e] to draw the same-actor inference, it is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact." *Id.* Additionally, Plaintiff disputes that he was hired by Mowell. (Resp. SOF ¶ 2.)

[16] Like his race discrimination claims, Plaintiff relies only on Section 1981 to support his retaliation claim against Defendant Mowell but relies on Title VII, Section 1981 and the THRA to support his claims against Defendant Bob Frensley. (Compl. ¶¶ 18–30.)

he engaged in the protected activity; (3) defendants subsequently took an adverse employment action against plaintiff; and (4) the adverse action was causally related to the protected activity. *Blizzard*, 698 F.3d at 288; *Ladd v. Grand Truck Western R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009); *Reed v. Amer. Cellular, Inc.*, 39 F. Supp. 3d 951, 970 (M.D. Tenn. 2014); *E.E.O.C. v. Gregg Appliances, Inc.*, No. 10–861, 2013 WL 3224028, at *4 (M.D. Tenn. June 25, 2013). For a retaliation claim, a plaintiff must show that "the employer would not have taken the adverse employment action but-for the design to retaliate." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, — U.S. —, 133 S. Ct. 2517, 2534 (2013). Retaliation claims also follow the *McDonnell Douglas* burden shifting framework; if plaintiff makes out a prima facie claim of retaliation, defendant then may provide a legitimate reason for termination, which must be rebutted by plaintiff. *Blackshear v. Interstate Brands Corps*., 495 Fed. Appx. 613, 619 (6th Cir. 2012); *Ladd*, 552 F.2d at 502; *Reed*, 39 F. Supp. 3d at 973.

   a. *Plaintiff engaged in protected activity.*

   Defendants first allege that Plaintiff has failed to present sufficient evidence that he engaged in protected activity. (Mowell Mem. ISO MSJ at 14.) We disagree. The Sixth Circuit has clearly stated that, "a demand that a supervisor cease his/her harassing conduct constitutes protected activity covered by Title VII." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015) (finding that plaintiff engaged in protected activity when she demanded that her supervisor stop engaging in harassing behavior); *see also Nash v. McHugh*, No.15–C–93, 2016 WL 204483, at *3 (M.D. Tenn. Jan. 15, 2016) (holding that reporting unlawful actions directly to harassing supervisor constituted protected activity). "The fact that [a complaint] was . . . 'informal conversation' does not change the nature and purpose of the conversation, which was a 'discrete, identifiable, and purposive' opposition to racially-oriented language."

*Trujillo v. Henniges Auto. Sealing Sys. N. Amer., Inc.*, 495 Fed. Appx. 651, 655 (6th Cir. 2012).

Here, Plaintiff testified that he complained directly to Mowell, his supervisor, every day, and told

both Mowell and Henderson that "the nigger jokes have to stop." (Pendleton Dep. at 107–08.)

Accordingly, Plaintiff has satisfied prong one of his retaliation claim.[17] *New Breed Logistics*,

783 F.3d at 1067; *Trujillo*, 495 Fed. Appx. at 655; *Nash*, 2016 WL 204483, at *3.

    *b. The adverse action was causally related to the protected activity.*

Defendants next argue that they are entitled to summary judgment on Plaintiff's

retaliation claim because Plaintiff has failed to prove causation. (Mowell Mem. ISO MSJ at 18.)

Plaintiff alleges that the "very close temporal proximity between his protected activity and the

adverse action is *alone* sufficient to establish causation." (Resp. at 20.) Plaintiff also asserts that

he has presented sufficient additional evidence to support an inference of retaliatory motive, such

as Defendants' disparate treatment of Plaintiff and other Caucasian salesmen. (*Id*. at 21.)

This circuit has held that, "temporal proximity, standing alone, is not enough to establish

a causal connection for a retaliation claim."[18] *Tuttle v. Metro Gov't of Nashville*, 474 F.3d 307,

321 (6th Cir. 2007); *see also Spengler v. Worthington Cylinders*, 615 F.3d 481, 494

---

[17] Defendants additionally contend that Plaintiff did not utilize the company's discrimination reporting procedure when he failed to report his complaints to Ms. Webb.
(Frensley Mem. ISO MSJ at 16–17.) The company's policy, though, requires employees to report complaints to either Webb or department managers, such as Mowell or Henderson. (*Id*. at 16.) We find that the record indicates that Plaintiff did follow company policy in reporting his complaints to Mowell and Henderson.

[18] However, "in some cases, temporal proximity may be sufficient to establish causation," *Hamilton v. Gen. Elec. Co*., 556 F.3d 428, 435 (6th Cir. 2009), such as "where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection . . . ,"*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008). *DiCarlo*, 358 F.3d at 422 ("In light of our prior precedent, the temporal proximity [,twenty-one days,] between the two events is significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive."); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (holding that a three-month gap between the protected action and the alleged retaliatory discharge supports an inference of causation based on temporal proximity alone).

(6th Cir. 2010); *Cunningham v. Windriver Mgmt. Grp.*, No. 10–C–358, 2011 WL 4449657, at *9

(M.D. Tenn. Sept. 26, 2011).  Instead, "[i]n analyzing the facts in temporal proximity cases, we

have always looked at the totality of the circumstances to determine whether an inference of

retaliatory motive could be drawn." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401

(6th Cir. 2010); *see also Hill v. Air Tran Airways*, 416 Fed. Appx. 494, 498 (6th Cir. 2011)

(holding that African-American plaintiff presented sufficient evidence of causation where

plaintiff filed a complaint five months prior to his termination and testified that other similarly

situated Caucasian employees were not terminated for engaging in identical conduct); *Pearson v.

Ford Motor Co.*, 747 F. Supp. 2d 966, 972 (S.D. Ohio 2010) (finding causal link between

protected activity and termination allegedly based on violation of company policy where plaintiff

filed a complaint two months before he was fired, testified to a pattern of harassment that "made

him sick," and provided evidence that others were not terminated for violating the same policy).

We need not determine whether temporal proximity alone establishes an inference of a

causal connection between Plaintiff's protected activity and his termination.  Here, Plaintiff

presents sufficient evidence in additional to temporal proximity to establish a prima facie case of

retaliation.  Plaintiff alleges that he complained to Mowell daily, was subjected to constant

harassment, and that Ritchie, a similarly situated Caucasian employee, was not terminated for

engaging in the same conduct as Plaintiff on April 26.  Plaintiff has met his burden of

establishing a prima facie case of retaliation.  *Vereecke*, 609 F.3d at 401; *Hill*,

416 Fed. Appx. at 498; *Pearson*, 747 F. Supp. 2d at 972.

Because Plaintiff made out a prima facie case under the *McDonnell Douglas* standard, the

burden shifts to Defendants to produce a legitimate reason for Plaintiff's termination.

411 U.S. at 802–05, 93 S. Ct. at 1824–25.  Defendants again contend that Plaintiff was

terminated for his disruptive behavior throughout April 26. For the purposes of this motion, we assume that Defendants' proffered reason for termination is sufficient under *McDonnell Douglas* and next consider whether Plaintiff has provided evidence to support a conclusion that Defendants' proffered reason was mere pretext. Like in our previous analysis concerning Plaintiff's race discrimination claim, we find that Plaintiff has produced enough evidence to raise a jury question as to Defendants' motives. First, Ritchie testified that Mowell approached him after the April 26 incident and said that Pendleton was fired because of the fight. (Ritchie Decl. ¶ 4.) Additionally, Plaintiff testified that immediately after the incident, Mowell yelled "Get your black ass out of here. You're fired." (Add. SOF ¶ 35.) Accordingly, Defendants' motions for summary judgment as to Plaintiff's retaliatory discharge claim are denied.

## III. Hostile Work Environment

Finally, Plaintiff brings a claim for hostile work environment against Defendant Bob Frensley under Title VII, Section 1981 and the THRA and against Defendant Mowell under Section 1981. (Compl. ¶ 9.) Title VII, Section 1981 and the THRA prohibit discrimination based on race that creates a hostile or abusive work environment. 42 U.S.C. § 2000e–2(a)(1); *Long v. Ford Motor Co.*, 193 Fed. Appx. 497, 501 (6th Cir. 2006); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (1999); *Fite*, 686 F. Supp. 2d at 752. Under all three statutes, to support a hostile work environment claim, Plaintiff must show: (1) he was a member of a protected class; (2) he was subjected to unwelcomed harassment; (3) the harassment was based on race; (4) the harassment created a hostile work environment; and (5) defendants are liable. *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 627 (6th Cir. 2013); *Ladd*, 552 F.3d at 500; *Fite*, 686 F. Supp. 2d at 752. To satisfy the fourth prong, plaintiff must show that the alleged conduct

was "so objectively severe or pervasive that it created an abusive work environment," *Reynolds v. Fed. Exp. Corp.*, 544 Fed. Appx. 611, 616 (6th Cir. 2013), and that the victim subjectively viewed the environment as severe, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S. Ct. 367, 371 (1993); *Williams v. CSX Transp. Co. Inc.*, 533 Fed. Appx. 637, 641 (6th Cir. 2013); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris*, 510 U.S. at 23, 114 S. Ct. at 371. Accordingly, "the totality-of-circumstances must be construed to mean that even where individual instances of [] harassment do not on their own create a hostile work environment, the accumulated effect of such incidents may result in a Title VII violation." *Williams*, 187 F.3d at 563. This circuit has held that "whether harassment is sufficiently severe or pervasive to establish a hostile work environment is 'quintessentially a question of fact.'" *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008). As to the final prong, employer liability is established if the alleged harassment was by a supervisor. *Johnson v. United Parcel Serv., Inc.*, 117 Fed. Appx. 444, 453 (6th Cir. 2004); *Quanex Corp.*, 191 F.3d at 664; *Hajizadeh v. Vanderbilt Univ.*, 879 F. Supp. 2d 910, 928 (M.D. Tenn. 2012).

   *a.   Prima Facie Case of Hostile Work Environment*

   Defendants concede that Plaintiff is a member of a protected class, but allege that Plaintiff has failed to meet his burden on the remaining four prongs of his hostile work environment claim. (Frensley Mem. ISO MSJ at 10.) Despite Defendants' contentions, we find that the record presents a fact question as to whether Plaintiff was subjected to unwelcome harassment; whether the harassment was based on race; and whether Defendants are liable. Plaintiff testified that he was subjected to unwanted racial harassment by his supervisor,

Mowell.[19]  (Add. SOF ¶ 5.)  This testimony, alone, is sufficient to raise a genuine issue of

material fact as to prongs one, two, three and five of Plaintiff's hostile work environment claim.

We also find that Plaintiff subjectively believed his work environment was hostile.  Plaintiff

testified that it was "sickening just having to work [at Bob Frensley] or [be] around [Mowell]."

(Pendleton Dep. at 111.)  Defendants' argument that Plaintiff's unsubstantiated testimony is

insufficient to defeat summary judgment is misplaced.  On a motion for summary judgment, "it

must be assumed that, as [plaintiff] testified, the word[s] [were] used."  *Johnson*, 117

Fed. Appx. at 455 (denying summary judgment on hostile work environment claim despite the

fact that witness did not corroborate plaintiff's allegations that the word "nigger" was used;

credibility determinations are for the jury and are not appropriate at the summary judgment

phase).  We do not judge the credibility of the witnesses at this stage; instead, taking the facts in

the light most favorable to the non-movant plaintiff, we consider whether a reasonable juror

could find in plaintiff's favor.  *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513; *Dawson*, 528

Fed. Appx. at 52.  We believe Plaintiff has met that burden here.

---

[19] It is undisputed that Defendant Mowell was Plaintiff's supervisor.  (Mowell Dep. at 27.)
Employers are vicariously liable for the actions of their supervisors.  *Burlington Indus. v. Ellerth*,
524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998).  Defendant Bob Frensley argues that it is
entitled to an affirmative defense on Plaintiff's hostile work environment claim because Plaintiff
failed to report the alleged discrimination to Webb.  (Frensley Mem. ISO MSJ at 9.)  Defendant
employer is entitled to an affirmative defense if the employer can establish: (1) "that it exercised
reasonable care to prevent and correct promptly any [racially] harassing behavior" by its
supervisor, and (2) that the plaintiff employee unreasonably failed to take advantage of any
preventative or corrective opportunities provided by the employer."  *Burlington Indus.*, 524
U.S. at 765, 118 S. Ct. at 2270; *Lyle v. The Cato Corp.*, 730 F. Supp. 2d 768, 778
(M.D. Tenn. 2010).  Here, the record is clear: Defendant Bob Frensley's anti-discrimination
policy required Plaintiff to report discrimination to *either* "department managers" or Ms. Webb.
(Add. SOF ¶ 14.)  Defendant Mowell was Plaintiff's department manager and Plaintiff testified
that he complained to Mowell on a daily basis.  Accordingly, Plaintiff did not "unreasonably
fail" to follow Defendant's anti-discrimination policy so Defendant is not shielded from liability.

*b. Objectively severe and pervasive conduct*

Lastly, we consider the fourth prong of a hostile work environment analysis: whether Plaintiff has shown that he was subjected to sufficiently severe or pervasive conduct to constitute a hostile work environment. While "mere utterance of an . . . epithet which engenders offensive feelings in an employee," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 106 S. Ct. 2399, 2405 (1986) (internal citation omitted), is not sufficient to support a claim for a hostile work environment, "Title VII comes into play before the harassing conduct leads to a nervous breakdown," *Harris*, 510 U.S. at 21, 114 S. Ct. at 370. We consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S. Ct. at 367; *Goldmeier v. Allstate Ins. Co*., 337 F.3d 629, 635 (6th Cir. 2003); *E.E.O.C. v. Finish Line, Inc*., 915 F. Supp. 2d 904, 915 (M.D. Tenn. 2013). Conduct need not be both severe and pervasive to constitute a hostile environment, but may be either sufficiently severe or sufficiently pervasive. *Williams*, 533 Fed. Appx. at 641; *Berryman v. SuperValu Holdings, Inc*., 669 F.3d 714, 717 n.2 (6th Cir. 2012) (holding that 'severe *or* pervasive,' not 'severe and pervasive' is the appropriate standard) (emphasis in original). "When a plaintiff alleges commonplace, ongoing, and continuous harassment and provides specific examples of that harassment sufficient for a court to judge the objective severity of that harassment, a '[p]laintiff's inability to recount any more specific instances [of discrimination] goes to the weight of [the] testimony, a matter for the finder of facts.'" *Armstrong v. Whirlpool Corp*., 363 Fed. Appx. 317, 327 (6th Cir. 2010); *see also Lyle*, 730 F. Supp. 2d at 779 ("Separately, each comment might not be considered to be severe and pervasive since none was threatening and some were directed to others. However,

when combined it is clear that sufficient facts have been forwarded which could support a determination that [p]laintiff was subjected to a hostile work environment."); *Shannon v. Advance Stores Co., Inc.*, No. 08-0940, 2009 WL 2767039, at *10 (M.D. Tenn. Aug. 27, 2009) (finding that "continuous verbal abuse" was sufficiently severe and pervasive to survive summary judgment on hostile work environment claim); *E.E.O.C. v. Freeman*, No. 06-0593, 2009 WL 4975280, at *7 (M.D. Tenn. Dec. 21, 2009) (holding that daily racial harassment by supervisor constituted a hostile work environment). As to the severity of the discriminatory conduct, "the use of the word 'nigger,' even taken in isolation, is not a 'mere offensive utterance.'" *Johnson*, 117 Fed. Appx. at 545. Racial slurs used by managers or supervisors are considered particularly severe. *Id.*

Here, Plaintiff testified that Defendant Mowell, his supervisor, told "nigger jokes," made fun of the way African-Americans spoke, told Plaintiff that "the only thing that niggers could do was wash cars," said that "he had a big dick like a nigger," and informed Plaintiff that he left his previous employer because his supervisor was a "lazy nigger." (Pendleton Dep. at 73, 111–12, 120.) Plaintiff stated that Mowell made racially inappropriate comments every day; that the comments were constant. (*Id.* at 111.) Plaintiff's testimony, that his supervisor used the word "nigger" and made other racist jokes on a daily basis despite Plaintiff's objections, could support a jury finding that Plaintiff was subjected to a hostile work environment. *Berryman*, 669 F.3d at 717 fn.2; *Armstrong*, 363 Fed. Appx. at 327; *Johnson*, 117 Fed. Appx. at 545; *Lyle*, 730 F. Supp. 2d at 779; *Shannon*, 2009 WL 2767039, at *10; *Freeman*, 2009 WL 4975280, at *7.

Accordingly, summary judgment on Plaintiff's hostile work environment claim is denied.

## IV. Punitive Damages

Lastly, Defendants ask us to dismiss Plaintiff's claim for punitive damages. (Frensley Mem. ISO MSJ at 20–22.) Defendants raise two arguments: (1) punitive damages are not recoverable under the THRA; and (2) because Plaintiff "has pled this matter . . . as a mixed motive case," Plaintiff is not entitled to punitive damages under Title VII or Section 1981. (*Id*. at 22.) First, in Plaintiff's response, he asserts that he is not seeking punitive damages under the THRA. (*See* Resp. at 23.) Accordingly, we grant Defendants' motion as to THRA punitive damages. *Ayala v. Summit Constructors, Inc.*, 788 F. Supp. 2d 703, 723 (M.D. Tenn. 2011) ("Despite generally being interpreted in the same fashion, Title VII and the THRA differ importantly in that punitive damages are not available under the THRA."). We address whether Plaintiff may proceed with his punitive damages demand under Title VII and Section 1981 below.

### a. Punitive Damages under Title VII and Section 1981

The Supreme Court has unequivocally declared that punitive damages are available under Title VII and Section 1981. *Kolstad v. Amer. Dental Ass'n*, 527 U.S. 526, 529–30, 119 S. Ct. 2118, 2121 (1999). Such damages, though, are limited "to cases in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Id*. *Kolstad* laid out a three-part test for us to employ in determining the applicability of punitive damages in the Title VII context. *New Breed Logistics*, 783 F.3d at 1072; *Fischer v. United Parcels Serv., Inc.*, 390 Fed. Appx. 465, 473–75 (6th Cir. 2010). First, the plaintiff must "demonstrate that the individuals perpetrating the discrimination acted with malice or reckless disregard toward the plaintiff's federally protected rights." *New Breed Logistics*, 783 F.3d at 1072; *Fischer*,

390 Fed. Appx. at 473–75; *Gregg Appliances, Inc.*, 2013 WL 3224032, at *3. An individual recklessly disregards a federally protected right when he acts "in the face of a perceived risk that its actions will violate federal law." *Kolstad*, 527 U.S. at 534, 119 S. Ct. at 2125; *see also New Breed Logistics*, 783 F.3d at 1072 (holding that plaintiff presented sufficient evidence to survive summary judgment on punitive damages demand where evidence was presented to show that defendants subjected plaintiffs to harassment and then terminated plaintiffs after they filed complaints); *Nijem v. Alsco, Inc.*, 796 F. Supp. 2d 883, 899 (M.D. Tenn. 2011) (denying defendant's motion for summary judgement as to punitive damages where plaintiff established issue of fact that defendant engaged in discriminatory conduct). Second, the plaintiff must impute liability to the employer by establishing that the discriminatory actor worked in a managerial capacity and acted within the scope of his or her employment. *New Breed Logistics*, 783 F.3d at 1072; *Fischer*, 390 Fed. Appx. at 473–75; *Gregg Appliances, Inc.*, 2013 WL 3224032, at *3. Third, the defendant may nevertheless avoid punitive damage liability by showing that it engaged in good faith efforts to comply with Title VII. *New Breed Logistics*, 783 F.3d at 1072; *Fischer*, 390 Fed. Appx. at 473–75; *Gregg Appliances, Inc.*, 2013 WL 3224032, at *3. However, "the mere existence of a written anti-discrimination policy alone does not shield the company from punitive damages." *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 532 (6th Cir. 2005). Instead, "the employer must show that it engaged in good faith efforts to *implement* the policy." *Hall v. Consol. Freightways Corp. of Del.*, 337 F.3d 669, 675 (6th Cir. 2003) (emphasis in original); *see also New Breed Logistics*, 783 F.3d at 1072 (defendant was not entitled to good faith efforts affirmative defense at summary judgment; defendants took little action to investigate the alleged discrimination); *Fischer*, 390 Fed. Appx. at 473–75 (holding that promulgating an anti-discrimination policy, training

employees in that policy and establishing a complaint system was not enough to defeat a claim for punitive damages at summary judgment where defendants presented no evidence that the policy was effectively implemented).

Defendants did not address the *Kolstad* three-part test and instead argue that Plaintiff is advancing a mixed-motive case and did not prove discriminatory intent. (Frensley Mem. ISO MSJ at 22.) We disagree. First, in his response to Defendants' motion for summary judgment, Plaintiff explicitly states that he is advancing a single-motive theory, "that Defendants unlawfully discharged him because of his race." (Resp. at 23.) We find that the record supports Plaintiff's assertion. (*See generally* Pendleton Dep.; Ritchie Decl.)

Even though Defendants present no arguments under *Kolstad*, we apply the three-part test to Plaintiff's punitive damages claim. As previously addressed, Plaintiff has raised a fact question as to whether Defendant Mowell subjected him to race discrimination. If a jury believes Plaintiff's testimony, it too could find that Defendants acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Kolstad*, 527 U.S. at 534, 119 S. Ct. at 2124 (internal citation omitted). It is also undisputed that Mowell was Plaintiff's supervisor. (Mowell Dep. at 2, 27.) Lastly, we find that Defendants are not entitled to the good-faith defense. Plaintiff has presented evidence that he reported the discrimination to Defendant Mowell and Henderson, per company policy, and that Mowell and Henderson failed to report Plaintiff's complaints to Webb. Additionally, it is undisputed that Defendants did not investigate Plaintiff's allegations of race discrimination at any time, including after he filed a charge with the E.E.O.C. (Webb Dep. at 59.) Accordingly, we deny Defendants' motions for Plaintiff's claim for punitive damages under Title VII and Section 1981.

**CONCLUSION**

For the reasons stated above, we deny Defendants' motions for summary judgment.

(Dkt. Nos. 103, 106.)  It is so ordered.

_____

Marvin E. Aspen
United States District Judge

Dated: May 19, 2016
         Chicago, Illinois